And we'll hear counsel in Fisher v. Tice. Good afternoon, your honors. My name is Bill Dunigan for the appellants. We should start with the issue of whether or not the district court erred in granting summary judgment to Tice on Fisher's claim for breach of fiduciary duty. Let's start with two undisputed facts. One, a jury could find based upon the evidence that Fisher and Tice had a joint venture to develop and market a Stevia sweetened chocolate bar using a specific business plan. Two, Tice developed and marketed a Stevia sweetened chocolate bar under the name Lily Sweets without Fisher, using essentially the same business plan. The issue is, what happened first? The dissolution of the joint venture or Tice's breach of fiduciary duty? The district court said as a matter of law, Fisher manifested an unequivocal election to end the joint venture before Tice breached. In our view, that was error. The jury could reasonably find for Fisher on that issue. Here's why. Everyone agrees that the legal standard that the court should instruct the jury on is whether a party manifested to the other party a clear and unequivocal election to withdraw from the joint venture. It's the jury's job to apply that standard, or it should be. Now, if I were arguing this case to the jury, I would make three points on that issue. The first point I would make would be, there is no event in this case that standing alone represents a clear and unequivocal manifestation of an intent to withdraw from the joint venture. Now, Ms. Tice argues that the statement of withdrawal is what occurred in an email on July 12th of 2010. Contains the words, we should go our separate ways. But that statement in the July 12th email was ambiguous. The district- Why do you say that there needs to be a single event? Or are you not saying there needs to be a single event? Well, my first argument to the jury would be there is no single event. I would agree that, Your Honor, that there could be a series of events- That in their totality- In their totality- Represent an unambiguous event. Yes, but see, what Ms. Tice points to is the one email which contains the words, let's go our separate ways. Well, yes, followed by years of failure to communicate with respect to the joint venture, notwithstanding continued contact on social and other matters. Yes, silence, Your Honor, is the third argument. I would rebut that if I was arguing it to the jury. Now, there are a lot of explanations for that silence. This is not a standard business relationship. This is two ladies with an emotional- Excuse me, I hear your attack on each one. I'm puzzled by why the two taken together are not pretty unequivocal. Okay, what Tice is saying is that the manifestation occurred on July 12th of 10. She's not going any further than that. She's just saying there's a confirmation of that by silence. Silence, I don't believe, can logically confirm a manifestation because a manifestation depends on actions. It depends on actions which were observable at the time, July 12th. Why actions? Why not words? Well, words or actions, Your Honor. You're not distinguishing words from some overt act of the physical act. No, no, Your Honor. A manifestation can be either- You started by saying the words were ambiguous. What is ambiguous about, I think, it best to go our separate ways? Because if you read the entire email, Your Honor, what they're talking about is a separate business venture that they were working on together at the time, which was an independent contractor relationship involving Fisher's business. It was a food brokerage business called Coast to Coast. Tice was working on a commission basis. And the email is absolutely clear from our perspective that that dealt only with that one independent contractor relationship involving the food brokerage business and had nothing to do with the Stevia-based chocolate bar. I mean, I may have a fight with my partner over advances he made to my wife and say, I'm never going to talk to you again. I don't want to see you anymore. It doesn't mean that whatever the fight was about doesn't necessarily inform the unequivocalness of I'm not going to talk to you ever again. And of course, my saying that, people say those sorts of things all the time, and then they kiss and make up later. But wouldn't that I'm never going to speak to you again be confirmed if I then never do speak to him again for a period of years? I don't think so, because I think you'd have to measure the I'll never speak to you again words at the time they're made based upon the circumstances that exist then. And not go back and reinvent history based upon something which happened later, okay? What is manifested occurs at the time that the statement or the action is made or taken, not in light of somebody's undisclosed intention later on. But you're mistreating me, therefore I think it's best we go our separate ways. What the mistreatment was about doesn't necessarily inform the unequivocalness of the statement that now we're going to go our separate ways. In a certain set- Not I quit, I'm not going to work for coast to coast anymore. But we're going to go our separate ways is a more unequivocal statement than that. It is, but the paragraphs, the sentences in the paragraphs before and the sentences in the paragraph after only refer to coast to coast. We're not trying to win this as a matter of law. We're not trying to say that they can't make that argument to the jury. But we're saying it's sufficiently unclear that it should be presented to the jury and the district court in that respect agreed with us. What the district court did was to take events which came later and use those to reinterpret the facts and the statements that existed as of July 12th. And we don't think that's logically proper. And even if it were, there are issues of fact as to what those later statements mean. Now let me go very quickly. The second argument I would make to the jury would be if Tice understood that Fisher thought the joint venture was continuing. At the time Tice was starting her new business, then that in itself should And a jury could reach that conclusion that Tice had that state of mind based upon the email from July 11th, July 16th of 2011, where Tice approaches Fisher and says, hey, my accountant says I need to get some piece of paper which says our prior business, Oz, dissolved. Do you have that piece of paper? Did that ever happen? And if Tice didn't think that Fisher was wanting to proceed with the joint venture, why is Tice making these statements, which a reasonable person could find were a lie, were intended to mislead Fisher as to what Tice was doing with respect to her part of the venture. And if Tice really believed, if we could convince the jury that Tice really believed that Fisher thought the joint venture was continuing. Then, I think the jury would be virtually compelled to conclude that Fisher did not manifest an intent to leave the joint venture. Thanks, Mr. Dunnegan. Thank you. We'll hear from Mr. Lopez. Thank you, your honor. May it please the court, I'm Ronald Lopez. I'm here with my colleague, Zachary Stillings from the law firm of Nixon Peabody. We represent the defendant, Cynthia Tice. Let me get right to the point that the court raised. On July 12th, in an email, Tice wrote to Fisher, or Fisher wrote to Tice, let's go our separate ways. And at the time, there had been a phone call where Fisher told Tice that she as a person was indebted to Fisher for everything Tice had done, and Tice would be nothing without Fisher. To say the least, this was a monumental break between these two parties. And it was in that context that that email is written and that Tice confirms, I agree, we're going our separate ways. That's what happened on July 12th. He agrees with you that it's context. He says it's a different context. He says the rest of the email makes the context refer to the other venture. There's another business relationship between the parties, coast to coast, where Tice has reduced Fisher's compensation. She wants her to work in a deal called Rob's Really Good. And Tice says, I don't want anything to do with this. I think I've been mistreated. And she says, I'm just offended by what you said. Somebody tells you that they are indebted to you for their professional life. That is a monumental break. And when they say, let's go our separate ways, they mean it. Let's go to the next thing that is really just a clear-cut admission here. The silence, the inactions for years, words and acts clearly show this was a dissolved, oral joint venture. But remember what happened. Fisher writes to Krivett's sister and says, the wheels fell off the chocolate project. Now let's assume that didn't happen a year later. Let's assume it happened one day after the party said, let's go our separate ways. There's no question that's an admission. It's an admission of a party. And there's no question that the party's intended to go their separate ways. The fact that it happened not one day, or one week, or one month, but more than a year later, doesn't change the fact it's an admission by Fisher that the parties had terminated this oral agreement. And let's remember what this project was at the point of July 12th. There was no product. They didn't have a Stevia sweetened chocolate. In fact, they had tested something and it didn't work. There was never a letter of intent to the alleged joint venture of Krivett's. There was no LLC company. There were no trademark searches. There was no checking account. There was no lease for office. There was nothing. This was an idea that the two parties had talked about. We disputed and the court recognized that we would even dispute there was a joint venture, but we assumed for purposes of summary judgment there was. But clearly if there was, it was terminated as of July 12th, 2012, as confirmed by the email, and as confirmed by the fact that for the next 18, 24 months, Fisher, who said and testified she was involved every step of the way in this project, never once called up Cynthia Tyson and said, how's the project going? Never once said, I'm working on the business plan. Never once said, we ought to get going on this thing. Not one day, not one week, not one month, not one year after that July 12th email. The fact is, objectively, as the court stated, if you look at the totality of the evidence, the words and actions of the parties, this had dissolved. This project had dissolved. And the project, to the extent it was, was an idea to work on a Stevia sweetened project. The first project, of course, had not gotten off the ground at all, the project involving the beverage. Now, Judge Freeman wrote a 45-page analysis, looked at all the evidence, and carefully analyzed each of these arguments that the plaintiff has advanced here, and said no reasonable jury can conclude when you have a statement, an admission that says the project, the wheels fell off, and you have consistent silence with repeated social contact. They put in the record, the phone records of how many times Fisher and Tice talked after that. She came down with cancer. They still had some sort of relationship that they would talk, but never once, never once did Fisher ever say anything about the chocolate project. Is there some one reason you can point to why we're worrying about this seven years after you say the dissolution occurred? Well, because they want money. Well, I know, but that doesn't necessarily mean it takes seven years to seek it. Well, what happened is, is later, much later, about a year later, Cynthia Tice formed a new company, Lily's Chocolate. They developed a stevia sweetened chocolate, did not use the formula. Remember, there was an allegation in the complaint that Cynthia Tice somehow had taken the formula, didn't use the formula, didn't use anything. When was the complaint filed? The complaint was filed 2-9-2015. Oh, 15. That's right. It wasn't 15. It was right on the statute of limitations, frankly. In fact, we raised statute of limitations arguments on constructive trust and other theories that they advanced, but the court said that we don't have to get to those arguments. Yes, we did raise statute. So the complaint wasn't filed until 2015. And the report and recommendation, the 45 page report came out in 2016. So this went on, it was filed at the last possible moment. Under the statute of limitations, it could be filed. Was that three years? What's that? Three years? No, more? It might have been more than, yeah, it might have been more. It was a breach of contract and breach of fiduciary duty. Yeah, but it was close. I mean, we looked at that carefully. The other two points I'd make in my time left here is, not only was there that failure to communicate, and what the plaintiff has tried to say is somehow this period from dissolution on July 12th and these events afterwards somehow can't impact that dissolution that we say occurred on or about July 12th. And I would suggest, yes, they can for two reasons. One, admissions, you can always admit something was dissolved at any time. The admission that Fisher made was clearly relevant. And second, you can look at the failure to communicate as a form of admission, even as the cases say that silence itself can terminate it. But we didn't have just silence. We had the clear statement to go our separate ways, and then we had the silence, but it wasn't only silence, it was inaction. I mean, under the theory of the plaintiff, she was supposed to be working on this just as hard as Cynthia Tice. So they can't explain not only silence, but the fact that she never did anything on this project for these many years is very telling. The next point I would just make, I know my time's short here, is this argument on wind up. There's a theory that has been advanced as part of the summary judgment, opposition to the summary judgment, and then we really see it here on appeal. And the argument is this. Well, okay, let's say the joint venture did dissolve. Cynthia Tice did something wrong in winding it up. Somehow, she didn't properly wind it up and give assets to the plaintiff. Well, the first problem with that, there's two ways that this can be disposed of pretty quickly. The first way is, if you look at the complaint, and if you look at the theory of the case, the concept that this joint venture ever dissolved was not pled, was not alleged, and it was inconsistent with the theory of the case that they advanced before the trial court, and even the district court gave short shrift to that. The fact is, they raised this really for the first time as a throwaway in their opposition, and now they're focusing on it here in appeal. The second is, there's no doubt that it dissolved, but there was nothing to wind up. This oral project had no assets, no tangible assets, no checking account, no leases, no employees, no pension plan, nothing. They didn't even have a computer that they jointly owned. They didn't have a desk they jointly owned. They had nothing. The argument is intellectual property. Well, it's very thin. What the argument is, is that there was a knowledge of a niche for Stevia chocolate. So a general idea that Stevia chocolate would be a good idea. By the way, other Stevia chocolates were in the market, as was put in the record, that you should target Whole Foods as a customer, that you should tie the product to a charity, and that the product you should have fair trade ingredients. Those were what they came up with at the end of the day. There's no contract that says any of that was subject to some sort of confidentiality, that it belonged to the oral joint venture. And in fact, Fisher concedes that there was no non-compete agreement, and that either party at any time could go off and do their own project. There was no contractual restrictions on either party. There was no contractual restrictions on any of this. And these aren't even identified anywhere between the parties, as opposed to argument of counsel, between the parties as being some sort of intellectual property that needed some protection. And if it was, as soon as that dissolved, why didn't Fisher do something? Why didn't the joint venture dissolve if she believed these were protectable assets? When she wrote the email says, let's go our separate ways, why didn't she say, we've gotta split up these assets, we've gotta do, she didn't do anything. She didn't believe these were protectable assets. This is argument after the fact, of looking for something. The fact is, there was dissolution, there was nothing to wind up. It was inconsistent with the theory of their case, what they advanced below. And on that grounds, I would urge the court to affirm the district court's decision, granting summary judgment to defendant, Cynthia Tice. Thank you very much. Mr. Dunnigan, you've reserved some time. The first point I'd like to make is what Mr. Lopez referred to as a monumental break. It was not a monumental break. These parties, as they admit in their briefs, had numerous business ventures in the past, and at least two of them were going forward at that time. They stopped working together as boss and contractor, and they continued working together as joint venturers. Second, he makes much of the-  Because as the joint venturers, that email did not end the joint venture on the Stevias. Yes, but you said they continued working together. I was just wondering, is there any actual work that Fisher did, for example? Well, let's back up and address that, because at the point that they had their last tasting session, which I believe was either in June or July of 2010, they decided that the product wasn't quite up to their standards. But the ball was back in Cynthia Tice's court to go get more samples of that. Now, after that occurred, and after the fight in July occurred, they had to wind up the coast to coast business, which took time. Both of these people had day jobs that was consuming most of their time. This was a side project. Second, Cynthia Tice was telling Fisher that I need to make current income from the work I'm doing. I can't work for nothing, or I can't work for money way down the road right now. And Fisher, for that reason, was not pressing her to do work on this project. If she brought up the Stevia Sweeten project, she was just making her friend feel bad, and she chose not to do that. That's the reason it didn't come up. Couple that with her continued work, couple that with getting sick, that's how the year passed. I'm still, the continued, we keep coming back to continued work, and I'm wondering what that work is. It was the work that Tice was supposed to be doing to develop the project. That was her aspect. She was project development. She took the work that she should have been doing for the joint venture, and she did it for herself. That was the continued work. Fisher was waiting for her to do her aspect of the- But Fisher didn't do any- No, no. Fisher didn't do anything on the project development. But there's explanations for that that the jury should hear. What about Criven? Was Criven ever a party to this alleged joint venture? In our position is yes. And the basis for that is there's an email from Fisher copied to Tice going to Criven, which says we are proceeding to go forward with you as a quote principal and owner, end quote. Now, the district court said there's no express agreement to share losses. But it's our position that if you're agreeing that you're an owner and you're a principal, that's an implied agreement in fact that you're going to share what that business generates in terms of losses. Thank you very much, Mr. Dennegan. Thank you. We reserve decision.